BENJAMIN B. WAGNER
United States Attorney
TODD A. PICKLES
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

JOHN R. EDWARDS
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>  v.<br><br>NEIL A. VAN DYCK,<br><br>        Defendant. | CASE NO. 2:15-CR-00200-GEB<br><br>UNITED STATES' OPPOSITION TO QUI TAM RELATORS' MOTION TO DISBURSE FORFEITURE FUNDS<br><br>Date: March 4, 2016<br>Time: 9:00 a.m.<br>Judge: Hon. Garland E. Burrell |

# TABLE OF CONTENTS

I. INTRODUCTION ..........................................................................................................1

II. STATUTORY BACKGROUND .....................................................................................1

    A. The False Claims Act.........................................................................................1

    B. Criminal Forfeitures ...........................................................................................2

III. STATEMENT OF FACTS ..............................................................................................3

    A. The Criminal Investigation and Prosecution......................................................3

    B. The Civil False Claims Act Matter ....................................................................4

IV. ARGUMENT ...................................................................................................................5

    A. Relators Have No Right to Intervene in a Federal Criminal Prosecution...........6

    B. Criminal Prosecution is Not an Alternate Remedy.............................................7

        i. Relators' Interpretation of the "Alternate Remedy" Provision is Incorrect and Unworkable...........................................................................7

        ii. Relators' Reliance on *Barajas* is Misplaced.............................................10

        iii. Similar Attempts to Expand the Holding of *Barajas* Have Been Rejected......................................................................................................12

    C. The Circumstances of This Case Do Not Implicate the Alternate Remedy Provision of the False Claims Act ....................................................................13

V. CONCLUSION..............................................................................................................16

# TABLE OF AUTHORITIES

**Federal Cases**

Linda R.S. v. Richard D.,
   410 U.S. 614 (1973) .................................................................................................. 6

United States v. Lustman,
   Criminal No. 05-40082, 2006 WL 1207145 S.D. Ill. May 4, 2006) ............................ 9, 13

United States v. Bisig,
   Criminal No. 02-112, 2005 WL 3532554 (S.D. Ind. Dec. 21, 2005) ............................... 11

United States ex rel. Barajas v. Northrup,
   258 F.3d 1004 (9th Cir. 2001) ..................................................................................... 10

United States ex rel. Bledsoe v. Cmty. Health Sys.,
   342 F.3d 634 (6th Cir. 2003) ....................................................................................... 11

United States v. Kurlander,
   24 F. Supp. 3d 417 (D.N.J. 2014) ....................................................................... 7, 8, 11, 13

Vt. Agency of Nat. Res. v. United States ex rel. Stevens,
   529 U.S. 765 (2000) .................................................................................................... 2

**Federal Statutes**

18 U.S.C. § 287 (2012) ...................................................................................................... 8
18 U.S.C. § 1347 (2012) .................................................................................................... 4
18 U.S.C. § 3664 (2012) .................................................................................................... 9
18 U.S.C. § 3663A (2012) ................................................................................................. 9
18 U.S.C. § 853(k) (2012) ................................................................................................. 2
18 U.S.C. § 982(b) (2012) ................................................................................................. 2
18 U.S.C. § 982(a)(7) (2012) ............................................................................................. 4
18 U.S.C. § 3663A(a)(1) (2012) ...................................................................................... 10
18 U.S.C. § 981(a)(1)(C) (2012) ....................................................................................... 4
21 U.S.C. § 853 (2012) ..................................................................................................... 2
21 U.S.C. § 853(k) (2012) ............................................................................................ 2, 7
21 U.S.C. § 853(n) (2012) ................................................................................................. 7
21 U.S.C. § 853(n)(3) (2012) ............................................................................................ 2
21 U.S.C. § 853(n)(6) (2012) ............................................................................................ 3
21 U.S.C. § 853(n)(1), (2) (2012) ..................................................................................... 2
31 U.S.C. § 651 (2012) .................................................................................................... 12

31 U.S.C. § 853 (2012) ........................................................................................................... 6
31 U.S.C. § 3730 (2012) ...................................................................................................... 6, 9
31 U.S.C. § 3730(b) (2012) ..................................................................................................... 1
31 U.S.C. § 3730(c) (2012) ..................................................................................................... 9
31 U.S.C. § 3731(e) (2012) ................................................................................................... 11
31 U.S.C. § 3729(a)(1) (2012) ................................................................................................. 1
31 U.S.C. § 3730(b)(1) (2012) ................................................................................................. 6
31 U.S.C. § 3730(b)(2) (2012) ................................................................................................. 1
31 U.S.C. § 3730(b)(4) (2012) ................................................................................................. 1
31 U.S.C. § 3730(c)(5) (2012) ........................................................................... 2, 7, 12, 14, 15
31 U.S.C. § 3730(d)(1) (2012) ............................................................................................... 15
31 U.S.C. § 3730(d)(1), (2) (2012) .......................................................................................... 2
31 U.S.C. § 3729(a)(1)(A)-(C) (2012) ....................................................................... 7, 13, 15
31 U.S.C. §§ 3729-3733 (2012) .............................................................................................. 7

Fed. R. Crim. P. 32.2(b)(1) ..................................................................................................... 4

## I. INTRODUCTION

In moving to intervene in this criminal case, parties from a pending civil qui tam action are requesting an extraordinary, unprecedented expansion of the civil False Claims Act that is contrary to the plain reading of the statute, inconsistent with well-established authority, and without any published case law permitting a private plaintiff to intervene in a criminal case. Faced with the absence of legal support, the Relators suggest that they be permitted to interfere in the criminal case for the purpose of determining and obtaining a reward for exposing the defendant Neil Van Dyck's healthcare fraud. Yet, in contrast to the Relators' assertions, the criminal prosecution against Neil Van Dyck was the result of an independent investigation that long preceded the Relators' qui tam action. Moreover, any criminal forfeiture resulting from the case is to pay the victim-insurers, not the Realtors and their counsel. Whatever the merits of their claims to receive a reward relating to complaining about Van Dyck's fraud, those issues can be fully litigated in the qui tam action, which remains pending in this Court and is the appropriate means to address such matters. Simply put, the Relators have no place in this criminal prosecution. The Court should deny their motion.

## II. STATUTORY BACKGROUND

### A. The False Claims Act

The civil False Claims Act (also referred to as the FCA) imposes civil liability on any person who, among other things, knowingly presents to the United States a fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1). Not only may the Attorney General bring suit under the False Claims Act, a private person (known as a "relator") may bring a civil action on behalf of himself and the United States, alleging a violation of the False Claims Act (known as a "qui tam action"). 31 U.S.C. § 3730(b). The relator must serve a complaint and "written disclosure of substantially all material evidence and information the person possesses" on the United States. The complaint is filed with a district court under seal while the United States investigates the allegations. *Id*. § 3730(b)(2).

The United States may intervene and proceed with the action or decline to do so, in which case the relator may continue with the action. *Id*. § 3730(b)(4). Qui tam relators may receive a portion of the funds recovered in a successful qui tam action. *See Vermont Agency of Nat. Resources v. United States*

*ex rel. Stevens*, 529 U.S. 765, 772-75 (2000) (Congress may enact statutes that provide a basis for bounty hunter standing; the civil False Claims Act is such a statute). If successful in the qui tam action, the relator may receive 0 to 30% of the proceeds of the action or settlement, depending upon whether the United States takes over the action and the extent of the relator's contribution. *Id*. § 3730(d)(1), (2).

The False Claims Act allows the United States to "elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty." *Id*. § 3730(c)(5). Congress sought to provide the United States with the flexibility to choose how it wished to go forward with civil violations of the False Claims Act. *See* S. Rep. No. 99-345, at 27 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5292. However, Congress made clear that the United States would "not have the opportunity for dual recovery on the same claim or claims." *Id.* That is, the United States may have a choice of remedies to address its False Claims Act claims, but, once it made its election, it could not pursue its False Claims Act claims more than once.

Should the United States pursue its False Claims Act claims through an alternate remedy—thereby foreclosing any qui tam action—then the relator might be entitled to a share of the recovery to the same extent that he would have been entitled to recover a share of the qui tam recovery. *See* 31 U.S.C. § 3730(c)(5); S. Rep. No. 99-345, at 27. That is, the relator might be entitled to a share of the "proceeds" the United States received from that alternate remedy. *See* 31 U.S.C. § 3730(d)(1 ), (2).

**B. Criminal Forfeitures**

21 U.S.C. § 853, as incorporated by 18 U.S.C. § 982(b), provides for forfeiture in criminal cases. Except as provided in subsection (n), section 853(k) specifically prohibits a party claiming interest in forfeited property from intervening in a criminal case involving the forfeited property. 21 U.S.C. § 853(k). Accordingly, the only relief available to a person claiming interest in forfeited property is set forth in subsection (n). Subsection (n) provides that, following entry of an order of forfeiture, a person claiming interest in forfeited property may petition the court for an ancillary proceeding to adjudicate the validity of the petitioner's alleged interest. *Id.* § 853(n)(1), (2). The petition must be signed by the petitioner under penalty of perjury and set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought. *Id.*

§ 853(n)(3). If, after the hearing, the court determines that the petitioner has established, by a preponderance of the evidence, that the petitioner has superior right, title, or interest in the forfeited property, the court can amend the order of forfeiture in accordance with the court's determination. *Id.* § 853(n)(6).

## III. STATEMENT OF FACTS

### A. The Criminal Investigation and Prosecution

SafeGuard Services (SGS) is an organization that is contracted by the United States to help address fraud by performing Medicare data analysis and comprehensive problem identification and research to identify potentially fraudulent Medicare providers. In early 2011, SGS opened a fraud investigation of defendant Neil Van Dyck. (Edwards Decl., Exh. A (Affidavit of David Kvach), ¶ 57.) SGS's investigation revealed, among other things, that Van Dyck had billed zero routine-type, non-covered or conditionally covered nail care codes, but rather had consistently exceeded his peers in billing a higher-value nail care code—11730. (*Id.* ¶ 58.) SGS's investigation revealed that of all billers for code 11730 in California, Van Dyck was number one by more than two times over the next provider. (*Id.* ¶ 59.) SGS also discovered statements on Van Dyck's website concerning a "Spa Special" offering that indicated the non-licensed staff members at Van Dyck's office may be providing nail care not covered by Medicare. (*Id.* ¶¶ 60-61.)

As part of its fraud investigation in 2011, SGS requested documents from Van Dyck based on his unusual billing practices regarding podiatric services. (*Id.* ¶ 62.) In response, Van Dyck altered or caused to be altered records to falsely reflect symptoms present or services rendered in order to justify the fraudulent claims. (Dkt No. 14, Exh. A at 1.) After reviewing Van Dyck's documentation, SGS reported several anomalies indicating that it may have been created or altered to support the service. (Edwards Decl., Exh. A, ¶ 63.) SGS therefore concluded that it appears that Van Dyck was billing for services not rendered as billed and billing for non-covered or conditionally covered services under codes that allowed him to circumvent the coverage rules and guidelines. (*Id.* ¶ 2.)

In June 2011, SGS submitted a Medicare fraud referral that recommended that the United States investigate these allegations for potential criminal action. (*Id.*) As a result of this referral, the United States opened a criminal investigation of Van Dyck. (*Id.*) In January 2012, the United States then

requested from numerous patients information pertaining to their treatments from Van Dyck. (*Id*. ¶ 84.) These patient questionnaires indicated that Van Dyck had submitted false claims for routine foot care. (*Id*. ¶¶ 86-127.)

The United States' criminal investigation continued through September 28, 2015, when Information was filed in this action, *United States v. Van Dyck*, 2:15-CR-200, charging Van Dyck with a count of Health Care Fraud in violation of 18 U.S.C. § 1347 and alleging Criminal Forfeiture pursuant to 18 U.S.C. § 982(a)(7). (Dkt. No. 1.) The Information focused on Van Dyck's scheme to defraud Medicare, Medi-Cal, Tricare, and private insurers. (*Id*. ¶ 1.) On October 26, 2015, a plea agreement was filed in which Van Dyck agreed to plead guilty to the count of Health Care Fraud, in violation of 18 U.S.C. § 1347, and to forfeit $1,230,000, as a personal money judgment pursuant to 18 U.S.C. § 981(a)(1)(C) and Fed. R. Crim. P. 32.2(b)(1), as property that constitutes or was derived from the proceeds traceable to the commission of health care fraud, in violation of 18 U.S.C. § 1347. On October 27, 2015, the Court issued a personal forfeiture money judgment against Van Dyck in the amount of $1,230,000. Van Dyck now awaits judgment and sentencing, which is scheduled for April 15, 2016.

### B. The Civil False Claims Act Matter

On July 6, 2012—over a year after SGS informed the United States of Van Dyck's submission of fraudulent claims and more than six months into the ongoing criminal investigation—Nancy A. Smith and Wendy S. Johnson (collectively "Relators") filed a civil qui tam action in this Court on behalf of the United States pursuant to the False Claims Act alleging that Van Dyck (and Van Dyck's professional corporation) submitted improper claims for payment to Medicare, Medicaid, and Medi-Cal for services and durable medical equipment that were inadequately documented or otherwise unsupported and thus deemed not medically necessary. *See United States ex rel. Smith et al. v. Van Dyck et al*., 2:12-CV-1783, Compl. at 1. On August 30, 2012, Relators filed a Supplemental Memorandum and a First Amended False Claims Act Complaint, which added claims of retaliation, constructive discharge, and violation of California labor law. This qui tam case remained under seal until January 25, 2016, during which time the United States investigated Relators' allegations so that the United States could make an adequately informed decision whether to intervene in the qui tam case. Although the United States refrained from some investigative steps in connection with the qui tam that could have interfered with

1  the criminal investigation, such as issuing a civil investigative demand to Van Dyck and conducting
2  depositions, the United States continued to move forward with its civil investigation and completed
3  these additional investigative steps as soon as appropriate.

4  On September 17, 2015, the United States filed its final request for an extension of the seal in the
5  qui tam action. Although the criminal investigation was nearing completion, the United States'
6  investigation and evaluation of the Relators' complaint was ongoing because the qui tam action included
7  allegations that were not part of the criminal investigation. (Edwards Decl. ¶ 3.) In the months
8  following this final extension request, the United States continued its civil investigation, including
9  issuing civil investigative demands, requesting additional documents, reviewing documents, and
10 scheduling depositions. (*Id.* ¶ 4.) During this time period, the United States also attempted to negotiate
11 a settlement of the False Claims Act claims alleged in the qui tam action. (*Id.*) In November 2015, Van
12 Dyck rejected the United States' offer to settle the False Claims Act claims in the qui tam action and
13 declined to continue settlement negotiations. (*Id.*)

14 Relators' qui tam action, including all of the False Claims Act claims alleged in their complaint,
15 is currently pending in this Court. The United States' deadline for intervention is February 18, 2016.

16 **IV.   ARGUMENT**

17 Titled Motion to Disburse Forfeiture Funds, Relators' motion seeks unprecedented relief. In
18 short, Relators seek to intervene in this criminal prosecution for the purpose of obtaining a share of
19 forfeited funds plus expenses, attorney fees and costs. Relators are not victims of Van Dyck's criminal
20 conduct. In contrast, Relators are former employees who assisted Van Dyck and later filed a civil qui
21 tam action after the United States had uncovered the fraud. Without establishing any rights to recover in
22 the pending qui tam action, Relators now assert that their status as whistle blowers in the qui tam action
23 entitles them to step into this criminal prosecution and obtain a bounty. As discussed below, Relators'
24 contentions are unsupported. Neither civil nor criminal law permits the relief that Relators' seek. In
25 addition, Relators' attempt to expand the civil False Claims Act to criminal actions is both contrary to
26 the plain reading of the statute and inconsistent with well-established authority.

27 ///
28 ///

**A.      Relators Have No Right to Intervene in a Federal Criminal Prosecution**

No court has allowed a qui tam relator to intervene in criminal prosecution. American jurisprudence has long recognized that "a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another." *Linda R.S. v. Richard D. and Texas*, 410 U.S. 614, 619 (1973). In enunciating this well-established rule, the Supreme Court noted that its prior decisions "hold that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution" and that criminal prosecutions have "special status" in our legal system. *Id.*

It is against this backdrop that Relators have attempted to use 31 U.S.C. § 3730 and 21 U.S.C. § 853 as their authority to intervene in this criminal prosecution for the purpose of obtaining a share of forfeited funds plus expenses, attorney fees and costs. Neither of these statutory provisions, however, provides such authority. Section 3730 of the civil False Claims Act only provides for a *civil* remedy. 31 U.S.C. § 3730(b)(1) (limiting a relator's options to bringing "a civil action for the violation of section 3729 for the person and for the United States Government."). This case, of course, is a *criminal* prosecution. The civil False Claims Act provides no authority that would allow Relators either to bring a criminal action or to intervene in this criminal prosecution.

Section 853 also does not authorize qui tam relators to intervene in criminal prosecution. On the contrary, section 853 specifically prohibits intervention in the forfeiture aspects of the criminal prosecution:

> (k) Bar on intervention
>
> Except as provided in subsection (n) of this section, no party claiming an interest in property subject to forfeiture under this section may –
>
> > (1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or
> >
> > (2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

21 U.S.C. § 853(k). Furthermore, contrary to Relators' assertions, section 853(n) does not authorize intervention in a criminal prosecution. Section 853(n) only allows a person to petition the court,

1  following entry of an order of forfeiture, for an ancillary proceeding to challenge whether the forfeited
2  property was subject to forfeiture. *See* 21 U.S.C. § 853(n). Relators, however, have not filed such a
3  petition. In fact, Relators do not dispute that Van Dyck's property is subject to criminal forfeiture.
4  Instead, Relators seek to intervene in the criminal proceeding in order to obtain a share of the properly
5  forfeited property. Because section 853(n) does not provide for such relief, Relators request is
6  unequivocally barred by section 853(k). *See United States v. Kurlander*, 24 F. Supp. 3d 417, 424
7  (D.N.J. 2014) (finding that 21 U.S.C. § 853 specifically bars a relator's request to intervene for the
8  purpose of obtaining a relator's share of the criminal fines, restitution and/or forfeiture paid by a
9  criminal defendant). Accordingly, Relators' motion should be denied on these bases alone.

### B.  Criminal Prosecution is Not an Alternate Remedy

Contrary to Relators' assertions, criminal prosecution is not an "alternate remedy" under § 3730(c)(5) of the civil False Claims Act. Section 3730(c)(5) provides in pertinent part that:

> Notwithstanding subsection (b), the United States may elect to pursue its claim through any alternate remedy available to the United States, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section. Any finding of fact or conclusion of law in such other proceeding that has become final shall be conclusive on all parties to an action under this section.

31 U.S.C. § 3730(c)(5). Reading this provision in context indicates that Congress intended to limit any role that a relator has to the *civil* arena. Specifically, § 3730(b)(1) limits a relator's options to bringing "a *civil* action for the violation of section 3729 for the person and for the United States Government." *Id*. § 3730(b)(1). There is nothing in § 3730 that allows a relator to bring or otherwise participate in a criminal prosecution.

### i.  Relators' Interpretation of the "Alternate Remedy" Provision is Incorrect and Unworkable

In support of their argument that criminal prosecution is an "alternate remedy" within the meaning of the False Claims Act, Relators cite the House Judiciary Committee Report for House Bill 4827. *See* H.R. Report No. 99-660, 99th Cong. (1986). But that Report addressed a bill that Congress did not adopt. Instead, Congress adopted Senate Bill 1562, which left criminal prosecution out of the

UNITED STATES' OPPOSITION TO RELATORS'      7
MOTION TO DISBURSE FORFEITURE FUNDS

alternate-remedy provision.  *See* False Claims Amendments Act of 1986, Public Law 99-562 (S. 1562), 100 Stat. 3153 (1986) ("Notwithstanding subsection (b), the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty.").  The Senate Judiciary Committee Report clarified that the "alternate remedy" provision was directed at civil proceedings, stating that the United States "may elect to pursue any alternate remedy for recovery of the false claim which might be available under the administrative process. . . . The Committee intends that if civil monetary penalty proceedings are available, the Government may elect to pursue the claim either judicially or through an administrative civil penalty proceeding."  S. Rep. No. 99-345, 99th Cong. (1986), reprinted in 1986 U.S.C.C.A.N. 5266.

When Congress enacted the civil qui tam provisions in section 3730, it also amended the criminal False Claims Act, codified at 18 U.S.C. § 287.  *See* False Claims Amendments Act § 7.  Had Congress intended to provide for bounty standing in a criminal action, it had every opportunity to do so in its amendments to the criminal counterpart of the civil False Claims Act.  The fact that Congress declined to add a provision allowing a relator the opportunity to bring or participate in a criminal False Claims Act prosecution through its amendments to 18 U.S.C. § 287 is indicative of its intent to preserve the special status of criminal prosecutions, the rule of law that a third party does not have a cognizable interest in a criminal prosecution, and years of jurisprudence establishing the prosecutorial discretion of the Executive Branch in general and the Attorney General in particular.  *See also Kurlander*, 24 F. Supp. 3d at 425 ("There is nothing in section 3730 to permit a relator to bring or otherwise participate in a criminal prosecution.  And the history of the separation between civil and criminal proceedings in this nation's legal system is such that had Congress intended otherwise in enacting the civil False Claims Act, it would have said so."); *United States v. Lustman*, Crim. No. 05-40082, 2006 WL 1207145, at *3 (S.D. Ill. May 4, 2006) ("The purpose of a criminal prosecution is simply to determine whether the United States can sustain its burden of proof and, if necessary, determine an appropriate sentence for the defendant.  This is the gravest and most consequential business of the Court.  Surely Congress would have explicitly specified criminal prosecutions as an 'alternate remedy' if it intended the result urged here.").

///

Finally, to accept Relators' argument and find that a criminal prosecution is an alternate remedy would confer powers on relators that Congress could not have intended. Under the civil False Claims Act, a relator is entitled to "the same rights" in any alternate remedy proceeding as the relator "would have had if the action had continued under [31 U.S.C. § 3730]." 31 U.S.C. § 3730(c)(5). Those "rights" are not limited to merely a stake in the monetary recovery. Rather, the civil False Claims Act provides a relator with rights to participate actively in litigation of the United States' claim, to call witnesses at trial, to conduct discovery under the Federal Rules of Civil Procedure, to object and be heard prior to dismissal or settlement of the action, and to continue litigating even if the United States declines to prosecute the qui tam action. 31 U.S.C. § 3730(c). To give a relator the same rights in a criminal case, as section 3730(c)(5) would require, would have the absurd result of allowing a private bounty hunter to participate in criminal plea negotiations, to object to a plea agreement, to conduct broad civil discovery in a criminal case, and to call and cross-examine witnesses at the criminal trial. This would provide a third-party relator, whose only interest its bounty, greater rights in the criminal prosecution than the actual victims of the crime. *See* 18 U.S.C. § 3663A; 18 U.S.C. § 3664 (providing for victims to receive full restitution; and to the "extent practicable" receive notice of the conviction and an opportunity to provide information regarding their loss).

Relators argue that they seek only a share of the recovery in the criminal prosecution as an "alternate remedy" and have not sought to participate in the criminal prosecution to this point. The issue, however, is not what limited role these particular Relators seek at this particular time, but rather whether Congress intended relators to have any role at all. Section 3730 must be read in its entirety and in context; the Relators cannot simply parse phrases from different subsections of the statute to conclude that they are entitled to a share of forfeiture or the victims' restitution but do not intend to participate as a party in the criminal prosecution.

Moreover, Relators' interpretation conflicts sharply with the provisions of the Mandatory Victims Restitution Act of 1996 ("MVRA") that require a court to order that a defendant make restitution to the victim of the offense. 18 U.S.C. § 3663A(a)(1). Relators have pointed to no provision of the MVRA that would allow any portion of this mandatory restitution to be paid to them, as a finder's fee or bounty for reporting the criminal activity to the United States. Thus, for all these reasons, the

1   criminal prosecution of Van Dyck is not an "alternate remedy" through which Relators may seek a
2   financial award and the motion should be denied.

3           ii.        Relators' Reliance on *Barajas* is Misplaced

4         In support of their argument that the United States' criminal prosecution of Van Dyck is an
5   "alternate remedy" within the meaning of section 3730(c)(5), Relators largely rely upon *United States ex*
6   *rel. Barajas v. Northrup*, 258 F.3d 1004 (9th Cir. 2001). *Barajas*, however, provides no such support.
7   *Barajas* did not consider whether a criminal prosecution is an alternate remedy. Rather, *Barajas*
8   involved settlement of a prior civil action and a subsequent administrative suspension and debarment
9   proceeding. The Ninth Circuit took great care to limit its holding to the particular facts of that case,
10  where the United States settled one qui tam action and proceeded with a suspension and debarment
11  proceeding that made it impossible for the relator to proceed with a second qui tam action based on the
12  same conduct, due to claim preclusion. *Id*. at 1012-13. The Ninth Circuit's narrow holding explained
13  that under these specific circumstances, a suspension and debarment proceeding may be an alternate
14  remedy within the meaning of the False Claims Act. In reaching its decision in *Barajas*, the Ninth
15  Circuit made clear that "we do not hold that a suspension or debarment proceeding is always an
16  'alternate remedy' within the meaning of the [False Claims Act]" and that, "[i]ndeed, we believe that it
17  rarely will be." *Id.* at 1012

18        Unlike *Barajas*, Relators are permitted to go forward with their qui tam action, because the
19  criminal prosecution does not preclude their claim. In fact, the False Claims Act explicitly contemplates
20  pursuing both criminal and civil remedies based on the same facts. 31 U.S.C. § 3731(e)
21  ("Notwithstanding any other provision of law, the Federal Rules of Criminal Procedure, or the Federal
22  Rules of Evidence, a final judgment rendered in favor of the United States in any criminal proceeding
23  charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo
24  contendere, shall estop the defendant from denying the essential elements of the offense in any action
25  which involves the same transaction as in the criminal proceeding and which is brought under
26  subsection (a) or (b) of section 3730.").

27        This reading of the False Claims Act best protects both a relator and the United States. It
28  protects a relator by giving him or her a share of any proceeds from either the qui tam action or an

alternate proceeding when the United States' election bars continuation of the qui tam action. But if the United States pursues criminal action, the relator remains free to pursue the qui tam action. Because the criminal prosecution of Van Dyck does not prevent the Relators from continuing their qui tam action, this criminal prosecution is not an alternate remedy and the Relators are free to pursue their qui tam action under the False Claims Act.

Relators also rely on an unpublished 2005 decision from the Southern District of Indiana, *United States v. Bisig*, Crim. No. 02-112, 2005 WL 3532554 (S.D. Ind. Dec. 21, 2005). While not binding on this Court in any respect, *Bisig* also is unpersuasive because it misconstrues the purpose and application of the alternate remedy provision of the False Claims Act and "ignores long-determined fundamentals of our law, civil and criminal." *See Kurlander*, 24 F. Supp. 3d at 423. Relying on *Barajas* and *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 342 F.3d 634 (6th Cir. 2003), the court in *Bisig* held that:

> because the United States has achieved a monetary recovery from the Defendant in a manner outside of the qui tam action, and that recovery made an actual monetary recovery by the relator in the qui tam action either impossible or futile, the United States, in effect, elected to pursue its claim through an alternate remedy under § 3730(c)(5). This interpretation is especially appropriate in this particular situation in which the United States caused the stay of the qui tam action in order to pursue criminal prosecution against the Defendant and recover substantially all the Defendant's assets through forfeiture proceedings.

*Bisig*, 2005 WL 3532554 at *4. *Barajas* and *Bledsoe*, however, provide no support for such a leap. Neither case considered whether a criminal prosecution and the forfeiture proceedings that may be a part of such a prosecution are an alternate remedy. Rather, as discussed above, the Ninth Circuit limited its holding in *Barajas* to whether an administrative suspension and debarment proceeding could be an alternate remedy when the United States and the relator would be barred from going forward with the qui tam action based on the same conduct due to claim preclusion. *See Barajas*, 258 F.3d at 1012-13. Similarly, *Bledsoe* involved a civil settlement entered into by the United States in lieu of a False Claims Act action. The Sixth Circuit's narrow holding explained that, "[w]e therefore hold that a settlement pursued by the United States in lieu of intervening in a qui tam action asserting the same [False Claims Act] claims constitutes an 'alternate remedy' for purposes of 31 U.S.C. § 3730(c)(5)." *Bledsoe*, 342 F.3d at 649. The Sixth Circuit also noted a factual issue regarding whether the conduct dealt with in the

settlement agreement overlapped with the conduct alleged in the relator's complaint, and that it was up to the relator to provide concrete evidence that he had apprised the United States of the specific coding violations. *Id*. at 651. The Sixth Circuit only concluded "that Relator might be entitled to a share of the settlement agreement's proceeds," and remanded the matter to the district court to allow the Relator an opportunity to file an amended complaint to plead his claims with particularity and for an evidentiary hearing to determine whether the conduct in the settlement agreement overlapped with the conduct alleged in the qui tam action. *Id*. at 651.

In addition, *Bisig* is distinguishable. In *Bisig*, the court clearly limited its decision to permit the relator in that case to participate in ancillary forfeiture proceedings. *Bisig*, 2005 WL 3532554 at *6-7.[1] The court made it clear that the relator was not permitted to intervene in the criminal proceedings. *Id*. The court stated as follows: "the court's interpretation does not allow the relator to participate as a prosecuting party in the actual criminal prosecution of the defendant." *Id*. at *6. In this case, there are no ancillary forfeiture proceedings in which to participate. To the contrary, Relator seeks to intervene in the very proceeding that *Bisig* found to be impermissible — the criminal prosecution proceedings. *Id.* at *6.[2]

### iii. Similar Attempts to Expand the Holding of *Barajas* Have Been Rejected

Other courts have rejected attempts to extend *Barajas* to criminal proceedings. In *Lustman*, for example, the Southern District of Illinois declined to extend *Barajas* to that case, which, like the present case, concerned ongoing criminal and qui tam actions. Relying on *Barajas*, the relators argued that criminal prosecution constitutes an alternate remedy to a qui tam action under the False Claims Act.

---

[1] In *Bisig*, the court also limited its holding to cases where the United States has recovered substantially all of the defendant's available assets through the criminal forfeiture proceedings. *See id*. at *2. In this case, Relators have provided no support for their contention that forfeiture likely will leave Van Dyck "judgment proof." Nevertheless, to address Relators' concern, counsel for the United States proposed setting aside a portion of the forfeited funds until the qui tam action is resolved and it is determined (1) whether there is a judgment or settlement that would entitle Relators to recover any money and (2) if so, the amount of relators' share. Relators, however, rejected this proposal and proceeded with filing the present motion to intervene and disburse forfeiture funds.

[2] Relators also cite an unpublished 2007 decision from the Eastern District of Arkansas, *U.S. v. Chan*, 4:06-CR-344-SWW, Dkt. No. 39 (E.D. Ark. May 30, 2007), which, like *Bisig*, is distinguishable and not binding on this Court for the same reasons. *See Chan* at *9-10 ("[Relator] may participate in the criminal case against [defendant] *to the extent that he may follow the procedures used in forfeiture proceedings* in asserting his entitlement to any money collected by the government.") (emphasis added).

*Lustman*, 2006 WL 1207145, at *2.  The court, however, found this argument to be unpersuasive, noting that the relator in *Barajas* did not seek to intervene in the criminal prosecution.  *Id*. at *3.  The court also acknowledged that the Ninth Circuit took great care in *Barajas* to explain and limit its holding to a suspension and debarment proceeding (and settlement of a prior civil action) that barred continuation of the qui tam action arising out of the same conduct.  *Id*. at *2.  Recognizing that the alternate-remedy provision "assumes that the original qui tam action did not continue," the court concluded that the criminal prosecution of Lustman does not constitute an "alternate remedy" because the qui tam action was ongoing, even after the criminal judgment was entered.  *Id*. at *2.

Similarly, in *Kurlander*, the District of New Jersey held that the relators were not entitled to intervene in a criminal proceeding, even though the United States had declined to intervene in the qui tam action.  24 F. Supp. 3d at 421.  The court found that intervention by civil litigants in criminal proceedings was inappropriate because no private party has a judicially cognizable interest in a criminal prosecution.  *Id*. at 424.  Citing *Barajas*, the relators argued that the legislative policy underlying the False Claims Act supported their position that criminal prosecution constitutes an alternate remedy under the False Claims Act.  The court, however, rejected relators' argument:

> Furthermore, Relators argument that they are entitled to intervene in this criminal action because the criminal prosecution of the Defendants is an "alternate remedy" under § 3730(c)(5) of the civil FCA is unpersuasive. . . . Section 3730(b)(1) limits a relator's options to bringing "a civil action for the violation of section 3729 for the person and for the United States United States."  There is nothing in section 3730 to permit a relator to bring or otherwise participate in a criminal prosecution.  And the history of the separation between civil and criminal proceedings in this nation's legal system is such that had Congress intended otherwise in enacting the civil FCA, it would have said so.

*Id*. at 424-25 (internal cites omitted).  Since the court's decision in *Kurlander*, nothing in the False Claims Act has been amended to permit Relators to intervene in this criminal prosecution.

### C. The Circumstances of This Case Do Not Implicate the Alternate Remedy Provision of the False Claims Act

Even if a criminal proceeding could otherwise be an alternate remedy, the plain language of 31 U.S.C. § 3730(c)(5) does not permit intervention under the circumstances of this case.

For the United States to "elect" to pursue its False Claims Act claim through an "alternate" to the qui tam action, there must have been both the qui tam action and the alternate remedy from which to choose—i.e., the qui tam action must have been in existence at the time the United States pursued the alternate remedy. *See generally* 31 U.S.C. § 3730(c)(5) ("the Government may elect to pursue its claim through any alternate remedy . . . . If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section."). In this case, however, the United States' criminal investigation of Van Dyck was initiated before and independent of Relators' qui tam action. *See supra* at III.A. In fact, Relators are not the first sources of the information that led to the criminal prosecution of Van Dyck. In *Bisig* (as well as *Chan*), the courts relied on the fact that the United States first learned of defendant's illegal activity from the relator. *See Bisig* at *6 ("Of course, if the relator would not have uncovered the fraud in the first place, then the fraud possibly would have continued and the victims would have lost even more money."); *Chan* at *8 ("The United States does not refute that it first learned of [defendant]'s illegal activity from [relator] and that the United States Attorney's Office encouraged him to file a complaint."). The court stated that "as Congress recognized by allowing qui tam actions, it is only fair to allow the relator to be rewarded for its role in stopping the fraud." *Bisig* at *6. In this case, the United States first learned of Van Dyck's illegal activity from a contract investigator more than a year before Relators filed their qui tam action. *See supra* at III.A.

In early 2011, SGS—a contract investigator for the United States—had uncovered Van Dyck's pattern of health care fraud and recommended that the United States investigate Van Dyck for potential criminal action. (Edwards Decl., Exh. A, ¶¶ 2, 57-69.) Based on SGS's June 2011 referral, the United States investigated and subsequently charged Van Dyck. (*Id.* ¶¶ 2, 57-73, 84-127; *see also* Dkt. No. 14.) Under these circumstances, it would be unfair to the victims to allow Relators to share in the criminal recovery because the relator did not uncover the fraud in the first place. Relators came forward with their qui tam action only after SGS had completed its fraud investigation and the United States had contacted Van Dyck's patients about their treatments. (*See* Edwards Decl., Exh. A, ¶¶ 2, 57-73, 84-127.) Thus, the instant criminal proceeding cannot constitute an election of an "alternate" remedy under
///

the plain language of the statue, assuming that criminal proceedings could ever be an alternate remedy under the False Claims Act.

In addition, the statute makes clear that an alternate remedy only arises when the United States elects to pursue claims for which the relator would have had rights if the action had continued under the qui tam action. *See* 31 U.S.C. § 3730(c)(5) ("If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section."). This criminal proceeding, however, involves conduct that is beyond the reach of the False Claims Act. Specifically, the charge in this criminal proceeding concerns a scheme to defraud any health care benefit program, and the victims include private medical insurance companies. The private medical insurance companies are not named plaintiffs in Relators' qui tam complaint, nor could they be as the False Claims Act does not create liability for payments that do not satisfy the definition of a "claim" under the False Claims Act. *See* 31 U.S.C. § 3729(a)(1)(A)-(C) (establishing liability for a false or fraudulent "claim") and § 3729(b)(2) (defining the term "claim" to require a nexus with the United States). Such amounts are beyond the scope of the qui tam action and concern conduct not covered under the False Claims Act.

Moreover, the relief that Relators seek through intervention directly conflicts with the False Claims Act. Specifically, Relators seek an award of "expenses, attorney fees and costs, from all the assets obtained from Defendant Van Dyke, however these assets are acquired, whether by seizure, forfeiture, or otherwise." (Mot. at 3; Memo at 10-11.) Relator's expenses, attorney fees, and costs, however, are never taken from the money recovered by the United States' action or settlement. The False Claims Act is clear that any right to attorneys' fees and costs "shall be awarded against the defendant." 31 U.S.C. § 3730(d)(1). Relators provide no support for their requested relief, which also was rejected by the court in *Bisig*. *See Bisig*, 2005 WL 3532554 at *8 ("However, those fees and costs are not to be taken from the proceeds recovered by the United States . . . ."). Therefore, this Court should also deny Relators' motion on these bases.

Finally, even if the criminal proceeding could be characterized as an alternate remedy, intervention at this stage in the proceedings is unnecessary. Relators can pursue their qui tam action under the False Claims Act. If successful, Relators may establish damages equal to or greater than the

UNITED STATES' OPPOSITION TO RELATORS'
MOTION TO DISBURSE FORFEITURE FUNDS

15

amount of forfeiture.  If damages are established, Relators are free to pursue all available avenues of collection as in any civil action of any assets of Van Dyck.  At this stage in the proceedings, Relators have not established the liability or damages.  Therefore, intervention is barred and unnecessary in this case.

## V.     CONCLUSION

For the foregoing reasons, Relators' motion should be denied.

Dated:  February 4, 2016

BENJAMIN B. WAGNER
United States Attorney

By:   */s/ John R. Edwards*
JOHN R. EDWARDS
Assistant United States Attorney